SOUTHERN PUB. ASS'N *v.* CLEMENTS PAPER CO.

*(Nashville.* December Term, 1917.)

1. **SALES. Contracts. Validity. Mutuality. Certainty.**

A letter from a corporation to another, stating, "You may enter our contract for a minimum quantity of one hundred twenty tons, maximum quantity of one hundred forty-five tons" of paper specifying the prices and terms signed by the corporation and accepted by the other, is not void for uncertainty or lack of mutuality. (*Post, p.* 432.)

Cases cited and approved: Cherry v. Smith, 22 Tenn., 19; Walker Mfg. Co. v. Swift & Co., 200 Fed., 529.

2. **SALES. Contracts. Construction.**

In construing a contract the previous dealings of the parties and the circumstances in which the contract was made and the situation of the parties may be considered. (*Post, p.* 432.)

3. **SALES. Contracts. Construction. Rights of parties.**

Under contract for paper specifying a minimum and a maximum quantity if the option was with the seller, it was bound to deliver the minimum, and might deliver any additional quanity up to the maximum; but if it lay with the purchaser, the purchaser was bound to accept the minimum, and could require the maximum. (*Post, pp.* 432-434.)

Case cited and ditsinguished: Wheeler v. New Brunswick, etc., R. Co., 115 U. S., 29.

4. **SALES. Contracts. Construction. Rights of parties.**

Where a publishing company authorized a paper company to enter its order for a minimum of one hundred and twenty tons of paper and maximum of one hundred and forty-five tons, the offer being the purchaser's, the purchaser had the option, and could require the seller to furnish the maximum. (*Post, pp.* 434, 436.)

Cases cited and approved: Highland Chemical, etc., Co. v. Matthews, 76 N. Y., 145; B. P. Ducas Co. v. Bayer Co., 163 N. Y. Sup., 32; Farquhar Co. v. New River Mineral Co., 87 App. Div., 329; Small v. Quincy, 4 Me., 497; Disborough v. Neilson, 3 Johns. Cas. (N. Y.), 81; Nixon v. Nixon, 21 Ohio St., 118; Standard Sugar Refinery v. Castano (C. C.), 43 Fed., 279; Ill. Glass Co. v. Three States Lumber Co., 90 Ill. App., 599.

5. **SALES. Contracts. Actions. Premature suit.**

Under contract authorizing delivery of varying quantity of paper, where the parties disputed the construction, and negotiations were going on, but there had been no absolute and unequivocal refusal to deliver the quantity which the purchaser desired, and the term of the contract had not expired, a suit was premature. (*Post, pp.* 436-439.)

Cases cited and approved: Wheeler v. New Brunswick & C. R. Co., 115 U. S., 29; Dingley v. Oler, 117 U. S., 501; Johnstone v. Milling, L. R., 16 Q. B. Div., 460; Brady v. Oliver, 125 Tenn., 595.

FROM DAVIDSON

Appeal from the Chancery Court of Davidson County.—JAS. B. NEWMAN, Chancellor.

PITTS & McCONNICO, for appellant.

F. P. BOND, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This case was disposed of in the court below on bill of complaint and demurrer; the chancellor overruled the demurrer, and defendant paper company

has appealed. The grounds of demurrer are sufficiently indicated in the discussion which follows:

The complainant is a publishing concern, requiring large amounts of paper for use in its business. Defendant is engaged in the buying and selling of paper. Both concerns are located in the city of Nashville.

The publishing association submitted to the defendant an offer in letter form, which on acceptance constituted the contract, as follows:

" Nashville, Tennessee, August 5, 1915.

"Clements Paper Co., Nashville, Tenn.—Gentlemen: You may enter our contract for a minimum quantity of one hundred twenty tons, maximum quantity of one hundred forty-five tons, M. F., Eggshell, and S. and S. C. book paper, stock to be in every way equal to samples bearing your O. K., this paper to cost us $3.70 on Machine Finish and Eggshell, and $3.95 on the S. and S. C., paper to be packed soft fold and all prices to be F. O. B. Nashville. . . .

"Terms: Three per cent. for cash when paid by the tenth of the month following shipment, or ninety days net from date of shipment.

"This contract takes effect January 1, 1916, and terminates on December 31, 1916.

"SOUTHERN PUBLISHING ASSOCIATION,

"R. L. PIERCE, Manager.

"Accepted by CLEMENTS PAPER CO.,

"R. M. CLEMENTS, Pres."

We are of opinion that, on reason and by the decided weight of modern authority, such a contract is not void either for uncertainty or for lack of mutuality. *Cherry* v. *Smith,* 3 Humph. (22 Tenn.), 19, 39 Am. Dec., 150; *Walker Mfg. Co.* v. *Swift & Co.,* 200 Fed., 529, 119 C. C. A., 27, 43 L. R. A. (N. S.), 730, and note.

The main controversy is as to which of the contracting parties had the option in respect of the margin of twenty-five tons between the minimum and maximum limits specified, of one hundred and twenty and one hundred and forty-five tons. The rapid and pronounced rise in the price of print paper due to conditions incident to the Great War manifestly gave rise to the contention just stated.

The bill states the course of previous dealings, the circumstances in which the contract was made, and the situation of the parties as aids in determining the meaning of the contract. These are matters proper to be looked to by the court in arriving at the intention of the parties to the contract.

The option, being a limited one, in that either a minimum or maximum quantity is specified, the option might be with the seller or the purchaser as the language used, read in the light of the surrounding circumstances, may indicate. If the option was with the seller, it was bound to deliver at least the minimum quantity of paper, and might deliver any additional quantity it might choose up to the maximum limit. If it lay with the purchaser, it was

compelled to accept the minimum, and might require deliveries up to the maximum quantity limit. 2 Mechem on Sales, 1170, 1171.

Looking for aid, in construction respecting the option, to the situation of the parties: Which of the two in ordinary course would stipulate for its protection by way of such a margin of safety? As between a wholesale dealer and a purchaser who is to consume, so to speak, the commodity so sold, more frequently it is the case that such a hedge is incorporated for the benefit of the latter. A wholesaler, generally speaking, is bent on swelling the bulk of his sales, and has not the incentive or intent to stipulate for a minimum and maximum limit. He has other methods of hedging, such as the placing of covering orders in the markets; whereas, a purchaser who is not himself a seller of the commodity, as such, may stand to carry the overplus into another season or year.

The primary consideration in determining in whom is lodged the option seems to us to be: For whose protection was the provision made?

An interesting case is that of *Wheeler* v. *New Brunswick, etc., R. Co.*, 115 U. S., 29, 5 Sup. Ct., 1061, 1160, 29 L. Ed., 341. The railway company was taking up worn rails which it sold to Wheeler under a memorandum agreement in the form of a letter addressed by the purchaser to the railway company, and an acceptance of the offer substantially as follows:

"We have this day bought of you . . . two to six hundred tons, for delivery in New York or New Haven, between August 1st and October 1st." Signed by the purchaser.

"We hereby accept your order of this date and will deliver rails at places on terms named." Signed by the railway company.

The ruling of the court was that the option was the seller's. The railway company had a limited potential supply of old rails, and was uncertain as to what the tonnage would be. "It knew that by August it would have a thousand tons. It did not know how much more they would have by October 1st. It intended to secure the sale of what it might have, between two hundred and six hundred tons."

One of the *indicia* (subordinate to this primary consideration just noted) may be that the offer comes (1) from the purchaser, and the language used being his may relate to his needs, which are uncertain within certain limits of quantity; or (2) from the seller who may be stipulating against a contingency that may have bearing upon his ability to produce or furnish.

In the instant case the offer was the purchaser's, and we are of opinion that the incorporation of the minimum and maximum provision was meant to be its factor of safety. The letter of August 5, 1915, should be read as if it stated, "having looked into the matter of our requirements as publishers for the year 1916, enter our contract," etc. The ultimate

option, therefore, was with the purchaser; it being its needs that were gauged. *Highland Chemical, etc., Co.* v. *Matthews,* 76 N. Y., 145; *B. P. Ducas Co.* v. *Bayer Co.* (Sup.), 163 N. Y. Supp., 32, 41; *Farquhar Co.* v. *New River Miner.₁ Co.,* 87 App. Div., 329, 84 N. Y. Supp., 802.

The defendant contends that another rule is applicable, and should, when taken into consideration, deflect the decision in its favor. It is argued that the option was with the seller, it being the first actor, as deliverer of the paper.

The following quotation from 2 Mechem on Sales, 1171, is relied upon:

"In the absence of an express agreement, it must be determined from the nature of the case, and in this respect the rule laid down by the authorities that when, from the nature of an agreement, an election is to be made, the party who is by the agreement to do the first act, which from its nature cannot be done till the election is determined, has authority to make the choice in order that he may be able to do that first act, and, when once he has done that act, the election has been irrevocably determined, but till then he may change his mind."

And the following cases are cited on defendant's brief: *Small* v. *Quincy,* 4 Me. (4 Greenl.), 497; *Disborough* v. *Neilson,* 3 Johns. Cas. (N. Y.), 81; *Nixon* v. *Nixon,* 21 Ohio St., 118; *Standard Sugar Refinery* v. *Castano* (C. C.), 43 Fed., 279; *Ill. Glass Co.* v. *Three States Lumber Co.,* 90 Ill. App., 599.

In our opinion the test of first actor should be treated as only one among the *indicia*. It is more artificial or less substantial than the others, and is to be applied only when the others may not be brought into play.

The case of *Small* v. *Quincy*, supra, perhaps best illustrates its proper application. There the transaction was between two dealers in the same commodity living in the same city. The memorandum contract was in duplicate. One copy, signed by the purchaser, recited. "We agree to receive," and the other, by the seller, reciting, "We agree to sell and deliver." The case, therefore, was one where there was no order proceeding from the one party to the other, and where there appeared no difference in the attitude of the parties, to raise a presumption of a stipulation for the requirements of the one or the inability of the other to deliver. The case was one solvable by the application of the test last referred to.

But if this were a case for the application of that test, it seems that the first actor would be the publishing association, since it must have made specification of qualities and amounts of paper before deliveries could be made.

The defendant paper company was bound to furnish the maximum quantity, on complainant's clear election to that effect.

Another question remains for consideration—defendant's contention that the suit is premature, having been brought, it is urged, prior to the contract's termi-

nation date, December 31, 1916, without anterior breach by defendant.

The correspondence between the parties was exhibited with and a part of the bill of complaint. In August defendant wrote a letter which contained a statement that a delivery by it of the minimum quantity would fulfill its obligation, and that it had elected to furnish one hundred and twenty tons. In reply the complainant stated its present contention in respect to the contract, and gave specifications for a quantity of paper beyond the minimum limit. For some time the two parties to the contract conducted a correspondence in relation to who had the option; and, not being able to reach an understanding, further negotiation touching that matter was turned over to the attorneys of the respective parties, and truly able fencers for advantage these attorneys proved themselves. The discussion was complicated by reason of the injection of a declaration by complainant's attorney of its purpose to withhold payment (not then due) for $1,600 of paper, which had been delivered previously, as a set-off against damages, should defendant deliver less than the maximum quantity of paper. In complainant's letter of November 14, 1916, was contained this statement:

"If you see proper to make delivery of this stock some time during the remainder of the year, that will be satisfactory, and in the event you do so, we may desire to change some of the specifications to a dif-

ferent size, which will be just as convenient for you to deliver as the sizes already specified.''

Two days later complainant in a letter insisted upon an assurance that defendant would make shipments according to complainant's construction of the contract.

In a letter written by defendant (November 20th), but not received when suit was brought (November 22d), and incorporated in the bill of complaint by consent, it pressed for an understanding as to the payment of the $1,600, tendered an additional shipment, which would have made an aggregate above the minimum, but below the maximum, if payment of the $1,600 would be agreed to be paid in contract time, and stated:

''We have never had any idea of doing less than complying with our obligations under the contract, and have been discussing with you and your attorney said contract, with a view of ascertaining what was its proper construction.''

However, its own insistence as to the proper construction on the point of the option was not abandoned.

As we construe the correspondence there was no absolute and unequivocal refusal on defendant's part to deliver the maximum quantity; and, as seen, delivery during the remainder of the year had been declared by complainant to be acceptable.

In our opinion there was no matured cause of action when the suit was brought, the words and conduct relied upon as a breach of the contract by anticipation,

not amounting to a total refusal to perform it, or a fixed purpose not to do so that would operate as a breach by renunciation, under the principles announced in *Wheeler* v. *New Brunswick & C. R. Co.,* 115 U. S., 29, 5 Sup. Ct., 1061, 1160, 29 L. Ed., 341; *Dingley* v. *Oler,* 117 U. S., 501, 6 Sup. Ct., 850, 29 L. Ed., 987; *Johnstone* v. *Milling,* L. R., 16 Q. B. Div., 460; 3 Page on Contracts, section 1439. See, also, *Brady* v. *Oliver,* 125 Tenn., 595, 614, 147 S. W., 1135, 41 L. R. A. (N. S.), 60, Ann. Cas., 1913C, 381.

The grounds of demurrer relying upon prematurity of suit are sustained.  Decree accordingly.