**PENLEY BROS. CO. v. HALL.**

No. 3141.

Circuit Court of Appeals, First Circuit.

June 3, 1936.

Frank H. Haskell, of Portland, Me. (Eiffel B. Gale, of Boston, Mass., on the brief), for appellant.

Robert Hale, of Portland, Me. (Brooks Whitehouse and Verrill, Hale, Booth & Ives, all of Portland, Me., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal by the defendant from a final decree for the plaintiff in a suit in equity. We shall refer to the parties, plaintiff and defendant, as they appeared in the District Court. The suit is on a patent license agreement to recover royalties. No specific relief was prayed for except an account and payment of the sum found due. The District Judge held that royalties were due according to the terms of the agreement, and he directed that the account of them should be carried to June 6, 1935, about seventeen months after the beginning of this suit, on which date the agreement became terminated.

The points raised by the present appeal are: (1) Whether the case is within the jurisdiction of the federal court; (2) whether the claim can be prosecuted by a suit in equity, or should be sued at law; (3) whether the plaintiff is precluded from recovering because of her own breach of the license agreement; and (4) whether the account should have been carried forward to include items not due when the bill was filed.

The facts are not in dispute. Prevost, the plaintiff's testator, obtained United States patent No. 1,382,931, dated June 28, 1921, on "clothes pins and manufacture thereof." By the agreement sued on, he granted the defendant an exclusive license under this patent. The terms of this license agreement as far as here material were that the defendant would pay stated royalties (one-half cent per gross) on all clothespins manufactured by it under the patent, and that: "5. The licensee will use its best endeavors to detect every suspected infringement of the said letters patent, and on discovery of any suspected infringement, the licensee, at its own cost, may take all necessary proceedings for effectually protecting and defending said letters patent. In such event, the inventor agrees to render to the licensee every assistance in his power, except financial assistance, in helping the licensee to protect and defend the same. 6. If the said letters patent shall be judicially determined to be invalid, then this agreement shall forthwith become void, but without prejudice to the right of the inventor to recover any moneys due to him thereunder."

The defendant believed that the patent was being infringed by one Swezey, a manufacturer in Vermont, and called the matter to Prevost's attention by letter dated June 3, 1932. In this letter the defendant said that it would "go ahead with the suit against Swezey as you (Prevost) suggested"; that "the suit should be brought in your (Prevost's) name as patentee and in our (the defendant's) name as licensee"; that "we hope that Claim 2 will hold good, but we know there are prior patents that may make trouble. However, we are willing to go ahead under our agreement with you to start this suit and test out Claim 2 to see if it will hold." Prevost indorsed the letter: "The above meets with my approval and I hereby agree to the same." Before the infringement suit was instituted, Prevost died; and the plaintiff was in due course appointed his executrix. After her appointment, she signed and made oath to the bill of complaint in the infringement suit against Swezey, which was prepared by counsel for Penley Bros. Company and was also signed by that company. The date of her jurat to the bill was August 3, 1932. It was duly filed in the federal court for the district of Vermont on or about August 20, 1932.

Under date January 3, 1933, the plaintiff wrote to the defendant the following letter:

"Dear Sirs:

"I hereby repudiate and rescind any and all agreements or consent that may be contained, expressly or impliedly, in a letter dated June 3, 1932, addressed to Alfred L. Prevost, 124 Highview Avenue, Melrose, Massachusetts, and alleged to have been assented to by him with his signature, copy of which was handed to Mr. Chamberlin at the office of Ellis Spear, Jr., Esq., on Friday, December 30, 1932.

"I have instructed Mr. Spear orally and in writing to dismiss without prejudice the patent suit brought in my name as executrix and in the name of Penley Bros. Company v. Christopher Swezey, Inc., in the United States District Court for the District of Vermont. My father was· not informed of some material facts in connec-

tion with this patent suit and neither was I, and I hereby repudiate and rescind any and all action that has been taken in connection with the patent suit in the name of my father or of myself, except the dismissal thereof.

"Yours very truly,

"Louise A. Hall [Signed],

"Executrix of the Will of Alfred L. Prevost."

To this letter the defendants answered that they could not conceive what material facts the plaintiff and her father were not informed about or not made acquainted with; that the dismissal of the suit against Swezey would be prejudicial to Penley Bros. Company and would result in great injury to their business; that they believed that the plaintiff should co-operate and render every assistance in her power, except financial assistance, in helping to protect and defend the patent; and that they could not agree to a dismissal of the suit. The plaintiff replied under date of January 24, 1933, that she had what she believed to be reliable information that Swezey was not in fact manufacturing or selling infringing clothespins, and saw no reason why the suit should not be dismissed. The defendants answered that they had positive information to the contrary, and that Swezey's plant was now in operation on infringing clothespins; that the plaintiff's demand for dismissal of the suit was a breach of the covenants of the license; that they should pay no further royalties after that date (February 10, 1933), and considered themselves relieved of any further obligation under the license, and she was free to do with the patent as she saw fit; that "the situation is a business situation and we cannot afford to pay royalty any longer when it is perfectly clear that the patent affords us no vestige of protection." In view of the subsequent outcome of the Vermont suit, it seems clear that the plaintiff was mistaken in her statement that the patent was not being infringed. The infringement suit was not pressed to trial at that time.

On January 19, 1934, the present suit to recover royalties was begun. The defendant then pressed the infringement suit to hearing; and on June 6, 1935, the District Court in Vermont held the claims of the Prevost patent there in suit to be invalid. The plaintiff concedes that this decision terminated the license agreement, and that no further royalties became due. The Dis-

trict Judge found that the plaintiff was entitled to rocover royalties under the agreement up to that date; and they are included in the decree appealed from. The plaintiff never had her name struck off as plaintiff in the infringement suit, and she remained as nominal plaintiff in it until the final decree. Nor did she ever refuse to comply with any requests for assistance in prosecuting that suit. No such requests appear to have been made—perhaps because the defendant took her at her word, as it undoubtedly had the right to do. Wheeler v. New Brunswick & C. R. Co., 115 U.S. 29, 5 S.Ct. 1061, 1160, 29 L.Ed. 341; Canada, etc., S. S. Co. v. Flanders, 165 F. 321 (C.C.A.1). At the time when the present suit was instituted, the royalties due amounted to less than $1,100. Before beginning it, the plaintiff does not appear to have called upon the defendant for an account of royalties due, nor to have had any information as to the amount of them.

The defendant's first two points, viz., that the amount in controversy was not sufficient to give jurisdiction to the federal court, and that the claim was not properly suable in equity but should have been brought at law, cannot be sustained. The defendant made no question but that the plaintiff's allegation that the amount in controversy was more than $3,000 was made in good faith. In its counterclaim the defendant explicitly alleges that the controversy is "between citizens of different states and the value of the matter in controversy exceeds the sum or value of three thousand dollars ($3,000) exclusive of interest and costs, wherefore the defendant counter-claimant alleges that this Honorable Court has jurisdiction herein," etc. Central Commercial Co. v. Jones-Dusenbury Co. (C.C.A.) 251 F. 13; American R. Co. of Porto Rico v. South Porto Rico Sugar Co., 293 F. 670 (C.C.A.1); Scott v. Donald, 165 U.S. 58, at page 89, 17 S.Ct. 265, 41 L.Ed. 632; Schunk v. Moline, etc., Co., 147 U.S. 500, 505, 13 S. Ct. 416, 37 L.Ed. 255, show the limitation of the rule. See, too, Smithers v. Smith, 204 U.S. 632, 642, 643, 27 S.Ct. 297, 51 L. Ed. 656.

The question whether the suit should be on the equity side of the court or the law side was not one going to the jurisdiction of the court as a federal court. As to it the agreement of the parties assented to by the court that the case should proceed on the equity side is controlling. William-

son v. Chicago Mill & Lumber Co., 59 F. (2d) 918 (C.C.A.8).

▮ The defendant's next points are that the plaintiff's breach of the agreement precluded her from recovering on it; and that her refusal to assist in the infringement suit terminated the agreement and relieved it from paying any further royalties. The District Judge ruled that "the threatened action of the plaintiff, which was not carried out, could not be carried out, and which in no way caused loss or damage to the defendant, was no excuse for the non-performance of the contract on the part of the defendant." "I hold that the defendant is wrong in believing that it has been impeded by the plaintiff in the prosecution of the Vermont suit." This is not the correct test by which the liabilities of the parties should have been determined. It is well settled that a party who breaks a contract is precluded from recovering upon it, except upon proof that the part of the contract which he broke was independent of the part which he seeks to enforce. Roig v. Electrical Research Products Co., Inc., 57 F.(2d) 639, 642 (C. C.A.1), and cases cited; Helm v. American Hawaiian S. S. Co. (C.C.A.) 279 F. 72; 13 C.J. 725, collecting cases. The rule is long established, and the reasons on which it rests have been often stated.

The license agreement in this case put upon the *licensee* the burden of protecting the patent; but the agreement expressly provided, as above stated, that the *licensor* to whose rights and obligations the plaintiff succeeded should "render to the licensee every assistance in her power, except financial assistance, in helping the licensee to protect and defend the patent." Her letter of January 3, 1933, was a complete breach of this provision. No attempt is made to defend her action. As a matter of law, it disqualified her from suing on the contract except upon provisions therein which were independent of that which she had broken. It is the breach of the contract which works this disqualification;

and it is not necessary to show that the breach caused damage to the other party, or "impeded" the other party, in order for it to have that effect. Cases supra.

"In construing a mutual agreement, in which there are several stipulations on both sides, the question, whether one is absolute and independent, or conditional and made to depend on something first to be done on the other side, does not depend on any particular form of words, or upon any collocation of the different stipulations; but the whole instrument is to be taken together, and a careful consideration had of the various things to be done, to decide correctly the order in which they are to be done." Shaw, C. J., Cadwell v. Blake, 6 Gray (Mass.) 402, 407.

We think it clear that the clause which the plaintiff broke cannot be said to be independent, legally speaking, of the provision for payment of royalties. Royalties are distinctly the fruit of the patent monopoly; they are payments for it. Where a patent license agreement puts the *entire* burden of defending the patent upon the *licensor*, it is well settled that failure to do so on his part prevents him from recovering royalties. Wilfley v. New Standard Concentrator Co. (C.C.A.) 164 F. 421; Rosenthal Paper Co. v. National Folding Box Co., 226 N.Y. 313, 123 N.E. 766; Massie v. Asbestos Brake Co., 96 N.J.Eq. 612, 126 A. 669. Whether the licensor's duty in defense of the patent is much or little, the principle is the same; his action in protecting and defending the monopoly is not independent of the other party's agreement to pay royalties. The plaintiff's breach of the contract did not work a forfeiture of the royalties which had become due and payable before it occurred. For those she is entitled to recover, but for nothing afterwards.

The decree of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs in this court.