UNIVERSAL C.I.T. CREDIT CORPORA-
TION, Appellant,

v.

Rubye C. STEWART, Appellee.

No. 17233.

United States Court of Appeals
Fifth Circuit.

Jan. 14, 1959.

Rehearing Denied Feb. 14, 1959.

Spencer Carver, Biggers, Baker, Lloyd & Carver, Dallas, Tex., for appellant.

William Andress, Jr., Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Mrs. Stewart sues Universal C.I.T. Credit Corporation for damages for the conversion of her automobile and for exemplary damages on the ground that the conversion was in willful disregard of her rights. Either or both of two conversions is claimed, the first in the taking of the automobile, the second in its disposition. Universal C.I.T. defends, claiming that it took and disposed of the automobile under the terms of a purchase money chattel mortgage.[1] Judgment was entered upon a jury's verdict for the plaintiff in the amount of $358.24 as actual damages plus $1,250 as exemplary damages, or a total of $1,608.24, together with 6% interest from February 22, 1957, the date on which the car was taken approximately one year before the rendition of judgment on February 20, 1958.

Upon this appeal, Universal insists: (1) that the undisputed evidence shows

---

1. It relies particularly on the following terms of the chattel mortgage:

"If Customer *defaults on any obligation* under this mortgage, or if the holder shall consider the indebtedness or the car insecure, the full balance shall *without notice become due forthwith,* together with a reasonable sum (15% if permitted by law) as attorney's fees, if this mortgage is placed with an attorney. Customer agrees in any such case to pay said amount or, at holder's election, to deliver the car to the holder, and holder may, *without notice or demand* for performance or legal process, *enter any premises where the car may be found,* take possession of it and custody of anything found in it, and retain all payments as compensation for the use of the car while in Customer's possession. The car may be sold with or without notice, *at private* or public sale (at which the holder may purchase) with or without having the car at the sale; the proceeds less all expenses shall be credited on the amount payable hereunder; Customer shall pay any remaining balance forthwith as liquidated damages for the breach of this mortgage and shall receive any surplus.

\* \* \* \* \*

"*Waiver of any default shall not be a waiver of any other default.* No change in this mortgage shall be binding unless in writing signed by an officer of Universal C.I.T. \* \* \*." (Emphasis supplied.)

that it did not convert the automobile but lawfully and peacefully repossessed it at a time and in a manner provided by its chattel mortgage then in default; (2) that the evidence as to the value of the automobile is not sufficient to support the jury's verdict; (3) that, in view of the terms of the mortgage, the district court erred in charging the jury (a) that acceptance of late payments waived Universal's right to demand future payments on time, and (b) that notice and warning to Mrs. Stewart were required before default could be declared; (4) that the district court erred in allowing interest from February 22, 1957, the date of the taking.

■ Mrs. Stewart joined in the mortgage to accommodate her son-in-law, Lewis Gooch, who was a minor at the time of the purchase. The mortgage provided for monthly payments of $109.38 on the 25th day of each month. Gooch became in arrears with the payments, and thereafter he received notice of his induction into the Armed Forces. Mrs. Stewart and Gooch then traded cars. Upon a telephone call to Universal's office, Mrs. Stewart was informed that two payments would be required to bring the account current.[2] Beginning on the date of such conversation, she issued the following checks dated and in the amounts shown:

| Date | Amount |
|------|--------|
| 6-13-56 | $210.00 |
| 7-15-56 | 109.00 |
| 8-22-56 | 105.00 |
| 9-12-56 | 9.46 |
| 9-20-56 | 109.00 |
| 10-21-56 | 109.00 |
| 11-21-56 | 109.00 |
| 12-29-56 | 109.00 |
| 1-19-57 | 109.00 |
| | $ 978.46 |

2-20-57 (Returned because received in the mail on 2-23-57 after the car had been repossessed the previous day) $ 109.00

Total ...................$1,087.46

2. Mrs. Stewart testified:

"Q. In July (Sic, actually the check was issued June 13, 1956), 1956, when your check, Exhibit No. 2 was issued for $210.00, did you call or contact anyone at C.I.T. about this trade between you and Louis where you were exchanging cars? A. Yes.

"Q. Who did you talk to? A. I don't know.

"Q. Did you inquire in that conversation as to how much money it would require to bring the account current? A. Yes.

"Q. How much money was required at that time? A. Two payments.

"Q. Of $109.38 each? A. That is right.

"Q. Now you sent $210.00, according to Exhibit No. 2, didn't you? A. Yes, sir.

"Q. Did you subsequently make up the difference? A. Yes."

Mr. Cunningham, the defendant's branch manager, testified:

"Q. Now, let's see. You know when Rubye Stewart took this car over from Louis Gooch, did you not? A. Yes.

"Q. You knew she had contacted your office to find out what it would take to put the note back in good standing, and you told her two payments? A. That is correct.

"Q. And you did, right shortly thereafter, get Plaintiff's Exhibit 2, a check for $210.00, which was a little short of the two payments, that is right, isn't it? A. Yes, sir, that is correct.

"Q. And you didn't refuse to accept it because it was $8.76 short, did you? A. No, sir."

There is no dispute as to the foregoing facts. The confusion arose from dealings between Universal and Gooch of which Mrs. Stewart was not informed. When Gooch was unable to meet one of the payments, Universal granted him an extension and changed the due date of the monthly payments from the 25th to the 12th of the month. When Mrs. Stewart telephoned Universal and assumed primary responsibility for the payments, Gooch was in arrears for the payments due, as between him and Universal, on May 12 and June 12, 1956. From that telephone conversation (see footnote 2, supra), Mrs. Stewart evidently understood that the two payments referred to were all that would be due for the months of May and June. Universal conceded that the only change in the monthly due date was made with Gooch and that no change was made with Mrs. Stewart, and Mrs. Stewart denied having had notice of any change.

Other than the telephone call referred to, no communications passed between Mrs. Stewart and Universal until her automobile was seized on February 22, 1957. Universal's employee found the car on a private parking lot off of the street adjoining the beauty shop where Mrs. Stewart worked. Mrs. Stewart was only a few feet away, as the employee knew. However, he made no demand on her for the keys to the car and gave her no notice. Instead, he wired around the ignition on the car and took possession of it.

Mrs. Stewart called Universal's manager to report the car stolen, and he informed her that it had been repossessed. When she told him that a payment was in the mail, he replied that it would be refused and demanded the entire unpaid balance within a week. When Mrs. Stewart did not pay, Universal called on the dealer from whom it had purchased the note and mortgage to make good his guaranty and take over the car. This suit followed.

It is not necessary to decide whether wiring around the ignition while the automobile was parked on private property without notifying Mrs. Stewart at work a few feet away is peaceable repossession.[3] As between Universal and Mrs. Stewart, the telephone conversation (footnote 2, supra) probably left her under the impression that the payments which she made kept the contract in good standing. Both Gooch and Mrs. Stewart signed the original contract calling for payments on the 25th day of the month. It would hardly seem necessary to cite authorities to the effect that Mrs. Stewart is not bound by the agreement between Universal and Gooch of which she had no notice changing that date to the 12th.[4] As the tabulation of payments shows, Mrs. Stewart was four days late in making her December payment. All of the others were made before the 25th of the month, and each was accepted without objection except the check in transit when the car was seized.

 Universal's branch manager testified that the $1,271 balance paid by its dealer-assignor was all that the car was worth, and the dealer's manager gave his opinion that the car was worth $1,250 to $1,300 and testified that it was re-sold for $1,300. Mrs. Stewart testified without objection that the value of her automobile at the time it was picked up was $2,000. According to Universal's manager, the unpaid balance on the mortgage at the time the car was repossessed was $1,423.54. Adding to that balance the amount of $358.24 awarded by the jury as actual damages, it appears that the jury estimated the value of the car as $1,781.78, considerably less than the amount to which Mrs. Stewart testified. The qualification of a witness on the issue of value is largely within the discretion of the trial judge, and, in Texas, an

3. See 47 Am.Jur., Sales, § 953; Annotation 146 A.L.R. 1332.

4. Cf., A. F. Shapleigh Hardware Co. v. Wells, 1896, 90 Tex. 110, 37 S.W. 411; Wheeler v. New Brunswick & C. R. Co., 1885, 115 U.S. 29, 5 S.Ct. 1061, 1160, 29 L.Ed. 341; Chastain v. Cooper & Reed, 1953, 152 Tex. 322, 257 S.W. 2d 422; 10-A Tex.Jur., Contracts, § 213.

owner can generally testify as to the value of his own car, tools, or other personalty.[5]

 Universal contends that the district court erred in charging the jury that acceptance of late payments waived its right to demand future payments on time, since the mortgage expressly stated that waiver of any default should not be waiver of a future default, and that the court also erred in charging the jury that, after it had been habitually accepting late payments, notice and warning were required to Mrs. Stewart before it could declare a default for any future late payment. Both of these objections to the charge are premised upon the fact of a valid novation or alteration in the terms of the written contract moving the payment date forward from the 25th to the 12th, which, as has been shown, is a false premise, as between Universal and Mrs. Stewart. Further, the Texas courts follow the general rule that parties having power to make a contract have the power to modify it regardless of self-imposed limitations.[6]

██ In Texas, interest runs from the date of the wrongful injury or conversion.[7]

We find no reversible error in the record, and the judgment is

Affirmed.

HUTCHESON, Chief Judge (dissenting).

From the standpoint of the amount really involved, this is an appeal in a picayune case, and if it were not for the instructions as to, and the award of exemplary damages in direct contradiction of the law in Texas, I should merely note my dissent. When, however, as is the case here, there is absolutely no evidence which under Texas law would support the charge or the verdict in that respect, I cannot in justice to the law keep silent on the reasons for dissenting.

These briefly stated are that the case of Panola Motor Co. v. Corbin, Tex.Civ. App., 253 S.W.2d 688, 690, mis-cited by appellee as the sole authority for her claim that, if there was a conversion of the car, the credit company would be liable for exemplary damages, held just to the contrary. While upholding the judgment for actual damages, the court reversed it as to the award of exemplary damages and thus stated the Texas rule:

"Punitive or exemplary damages are recoverable only after a showing of aggravated circumstances of malice, fraud or gross negligence."

In support it cites the leading and authoritative Supreme Court opinion in Bennett v. Howard, 141 Tex. 101, 170 S. W.2d 709, in which the controlling Texas cases are collected and analyzed.

The evidence in this case was wholly devoid of proof of such facts. It showed beyond question that the company had nothing to gain, and gained nothing, by the foreclosure except freedom from the trials and tribulations connected with handling and keeping up with collections on the paper. The contract clearly provided:

"If Customer defaults on any obligation under this mortgage, or if the holder shall consider the indebtedness or the car insecure, the full balance shall without notice become due forthwith * * * and holder may without notice or demand for performance or legal process, enter any premises where the car may be found, take possession of it, * * *"

**5.** Cf., Calvert Fire Ins. Co. v. McClintic, Tex.Civ.App., 1954, 267 S.W.2d 568; Motor Finance Co. v. Allen, Tex.Civ.App. 1952, 252 S.W.2d 1022; Pacific Finance Corporation v. Gilkerson, Tex.Civ.App., 1949, 217 S.W.2d 440; Western Cotton Oil Co. v. Mayes, Tex.Civ.App.1952, 245 S.W.2d 280.

**6.** See Rhoads Drilling Co. v. Allred, Tex. Com.App.1934, 123 Tex. 229, 70 S.W.2d 576, 583, and Groce v. P. B. Yates Mach. Co., Tex.Com.App.1926, 288 S.W. 161, 162.

**7.** 42 Tex.Jur., Trover and Conversion, § 64, p. 581, n. 8, and cases there collected.

While under the evidence in this case it seems to me very doubtful that a case was made out for actual damages, the defendant did not move for a verdict on this ground, and under the precedents it is not, in my opinion, entitled to make the claim. As to the exemplary damages, however, by its exceptions to the charge, its point was made and saved. I, therefore, dissent from the affirmance of the judgment for exemplary damages.

Rehearing denied: HUTCHESON, Chief Judge, dissenting.