**SOUTHERN TRAVELERS' ASS'N v. WRIGHT. (No. 601.)**

Court of Civil Appeals of Texas. Eastland. Sept. 27, 1929.

Rehearing Denied Nov. 1, 1929.

T. B. Ridgell, of Breckenridge, and J. E. Gilbert, of Dallas, for appellant.

Robert E. Bowers, of Breckenridge, for appellee.

FUNDERBURK, J. Southern Travelers' Association is an insurance corporation existing by virtue of chapter 6, title 78, Revised Statutes of 1925, entitled "Mutual Assessment Accident Companies." By application dated January 25, 1926, W. L. Wright applied for insurance membership in said company, to include insurance designated as "Class E," covering certain accidental injuries, and signified in the application his desire to have a double membership in said class. The application stipulated that, if same was accepted, the articles of incorporation, the by-laws of the association, the application, and certificate of membership would constitute the contract of insurance. Another statement in the application was: "I am inclosing check for $12.00 to cover membership fee(s) which ——— cludes my dues and premiums to next quarterly call." The application was accepted, and on February 2, 1926, there was issued and in due course delivered to the said W. L. Wright two certificates of membership; one being No. 1536, class E, and the other No. 1537, class EE. Each of the certificates evidence the obligation of the insurance company to insure the applicant against accidental death in the sum of $6,000 and other benefits. On February 6, 1926, the insurance company, in transmitting the certificates to the said Wright, among other things, stated: "We are pleased to hand you herewith certificate of membership No. 1536–37 in class E, doubled as per your application sent in through Mr. Frank Edwards;" and also, "According to our records, your membership with us is paid up to June 1, 1926."

Under date of February 17, 1926, and immediately upon receipt of the certificates of insurance, said W. L. Wright wrote the company as follows:

"At the time I made application with your Mr. Edwards for protection in your association, I understood through him that I was paying for both health and accident insurance. I was surprised and disappointed this morning upon receipt of certificates that I was protected only against accident.

"May I ask you also why you have issued to me a certificate in class 'E' and class 'EE' both, when, according to your schedule, class EE is merely a double of class 'E.' Does this mean that in case of accidental death I would receive protection from both classes, making $18,000.00? It would seem that this is the case if I am protected under both classes, however it does not seem reasonable to assume that.

"May I have your reply to the above at once? It is probable that you have given me protection in the two classes above mentioned instead of the class E and B, which covers health and accident."

To this letter the insurance company replied on February 19, 1926, as follows:

"We have your favor 17th inst. We inclose herewith a copy of your application, which as you will note applies for membership in class E and EE.

"EE is merely to signify to the bookkeeping department that it is a 'double header.' Each membership in class E pays $6,000.00 principal sum and $100.00 per month for two entire years, for total disability, and for two memberships the cost is increased 100 per cent. and the benefits 100 per cent.

"We note your comment relative to the rider which has attached. That was gotten out recently in response to demands from some that wanted to know just what the benefits were, and was not explained quite plain enough, and in order to prevent any misunderstanding or complications, at the annual members' meeting February 6, by unanimous consent a resolution was passed which specifically stated as being understood that class E paid $6,000.00 principal sum, with $100.00 per month total disability benefit and the double, or doubled, or two memberships, or EE membership was merely meant to be the double of the single and in that event the single was void and the 'double would apply.

"The copy of the application herewith is the foundation of the contract as signed by you, and other members, and gives you the benefit and the costs on the front and back pages.

"Should you want the sick benefit, send us four dollars additional and return your certificates and we can include same, making them E and B and EE and BB. In the center of the back page you will find benefits of each class B described.

"If you only wanted one class in the health and accident you should have only paid Mr. Edwards $8.00 instead of $12.00. We would be glad to make the change for you, and will file your other away for you, to be taken up at any time you should want it, and credit your account with $4.00 additional for future payment. Hope that this explains matters to you fully, and if we can be of any assistance to you call on us."

Wright made no reply to this letter. On May 1st the insurance company mailed notice to Wright of a call for additional dues or premium claimed to be due on June 1, 1926, and later, as a courtesy, sent additional notices, both before and after said June 1st. Wright made no response to these notices, and paid the company no other sum of money than the $12.00 originally transmitted with the application. On July 18, 1926, Wright was accidentally killed in an automobile wreck and due notice of that fact given to the company. This suit was brought by Mrs. Mallie Wright, mother of the insured and beneficiary in said certificates.

In plaintiff's pleading it was contended that the letters quoted above from Wright to the insurance company dated February 17th, and from the insurance company to Wright, dated February 19th, evidenced an agreement to cancel certificate class EE, which was a mere double of class E, and to credit on future premiums in class E $4 surplus out of the $12 originally transmitted to the company. Under this phase of the case, plaintiff contended that, even though said sum of $12 originally transmitted included the payment of premiums and dues only up to June 1, 1926, that the $4, when credited upon future premiums, had the effect of keeping the certificate in force to a time subsequent to the death of the insured. An alternative claim of plaintiff was that, if certificate EE had not been canceled by agreement as alleged, then both certificates E and EE were in force, and the payment of $12 originally made was by agreement applied on the payment of premiums on said certificates, thereby having the effect of keeping each of same in force to a time including the death of the insured.

The defendant, insurance company, by its answer, contested the claim that there had been any novation of the original contract, and further contended that, of the $12 originally transmitted, $6 was for the payment of membership fees, as distinguished from premiums, and that the remaining $6 paid the premiums due only up to June 1st, and that, call having been made for additional premiums as provided by the contract of insurance, and no additional premiums having been paid, the insurance, by the terms of the contract, lapsed on said June 1st, and was not in force and effect at the time of the death of said Wright.

Upon the trial two special issues were submitted to the jury, as follows:

"Special Issue No 1: At the time of the remittance by the deceased W. L. Wright, of the sum of twelve ($12.00) dollars to the defendant, Southern Travelers' Association, was it mutually understood and agreed by and between said deceased and said defendant that said deceased would be given credit for all of said amount as a payment on premiums? Answer 'Yes' or 'No.'"

And the jury answered, "Yes."

"Special Issue No. 2: On February 19, 1926, was it mutually understood and agreed by and between the deceased W. L. Wright, and the defendant Southern Travelers' Association, that certificate or policy No. 1537 class EE, should be canceled and that four ($4.00) dollars of the twelve ($12.00) dollars theretofore remitted by said deceased to said defendant should be credited as a payment of premium on certificate or policy No. 1536, class E? Answer 'Yes' or 'No.'"

And the jury answered, "Yes."

Upon the answers of the jury the trial court gave plaintiff judgment to include the sum of $6,000 due upon one certificate. Defendant, Southern Travelers' Association, brings the case before us by appeal.

■ In addition to the foregoing statement of the case, other facts are necessary to be considered, and will be hereafter stated in their proper connection. Appellant, in different ways, challenges the existence of any evidence, as well as the sufficiency of the evidence, to authorize the submission of special issue No. 2. Appellee objects to the consideration of any such assignments on the ground that appellant made a motion for judgment in its favor upon the answers of the jury, and is therefore precluded from questioning the existence of any evidence or sufficiency of evidence to authorize the submission of the issue. We have readily reached the conclusion that the principle contended for by appellee is not applicable here. Appellant did make a motion for judgment, but its contention that it was entitled to a judgment was not based upon the findings of the jury, but, on the contrary, its claim of such right was predicated upon the theory that the jury's findings were immaterial, and by no means concluded appellant's rights, which it is contended are controlled by questions of law independently of the jury's verdict. We therefore accordingly overrule appellee's contention in this respect.

■ We are also of opinion that special issue No 2 could not properly form the basis of a valid judgment in favor of appellee. If a new contract was substituted for the original contract, it was a contract in writing, and clearly not within the province of the jury to construe it. Whether there was such contract must be determined from a reading of the two letters in question, in the light of the preceding transactions between the parties.

The letter of February 17th from Wright to appellant does not, in our opinion, show a rejection of both or either of the certificates. Wright, when confronted with the information that his application, being the basis of the contract, called for the very certificates which he had received, thereafter remained silent, thus logically suggesting that he was convinced that his understanding of the character of insurance he had applied for, as referred to in his letter, was wrong. Appellant's letter was at most a proffer of a different contract, made upon conditions, one of which being that the certificates already delivered should be returned. It seems clear to us that no contract could result, in the absence of an acceptance of this offer by Wright. The statement in appellant's letter, "We would be glad to make the change for you, and will file your other away for you, to be taken up at any time you should want it, and credit your account with $4.00 additional for future payment," is required by the context to read, in effect, as follows: "We would be glad to make the change for you, *and in that case* will file your other away for you," etc. From what has been said, it follows that, in our opinion, the insurance evidenced by both certificates E and EE was in force for such time as the terms of the contract provided.

■■ Appellee, by her fourth proposition, seeks to justify the judgment on the ground that the $12 transmitted with the application constituted a payment upon only the premiums, which had the effect of keeping the insurance in force for a time subsequent to the death of the insured. A consideration of this contention requires the examination of additional facts. The matter seems to be stressed by repetitions in the contract that the act of incorporation and by-laws, the application for membership, and the certificates shall constitute the contract.

In section 4, art. II, of the by-laws, it is provided: "* * * Said policy or membership certificate of insurance, together with the application of said member for membership in the association, the articles of incorporation and the by-laws of this association shall be considered in each case the *entire contract* (italics ours) between the member and this association."

Section 3, art. II, of the by-laws, reads: "Each application for membership in this association must be accompanied by a membership fee and on such form as the board of directors may from time to time prescribe in conformity to these by-laws and the laws of the state of Texas," etc.

Section 1, art. IV, of the by-laws, in part provides: "Permanent premiums are fixed as a minimum by the Board of Directors, as indicated on application, as follows: * * * Class E, accident, $12.00. * * * Each

member is required to pay premiums annually in advance in the classes as named above to which the member is subscribed, but as a convenience to the member, notice of partial payment will be made from time to time."

Section 2, art. IV, is as follows: "The board of directors may order call as authorized by law upon each and every member for funds whenever in their opinion it is necessary, and said board of directors may, at their option, call for a membership fee, not to exceed $3.00 per membership, for such purposes as may be sent [set] out in the notice of the call, which when called by the board of directors, must be mailed by the secretary to each member at least thirty days before said premium or membership fee becomes due."

Section 3, art. IV, provides: "It shall be and is hereby made the duty of each member of this association to remit promptly the amount of each premium call or membership fee to the secretary of the association at his business office at Dallas, Texas. Such call or membership fee shall be due and payable within thirty days from and after the date which notice thereof bears," etc.

Section 1, art. V, provides: "Upon the failure of any member to pay premiums or any call on or before thirty days from date of mailing of said call, said member shall become and is suspended as of 12:00 o'clock noon of said thirtieth day," etc.

Section 4, art. VIII, defining the powers and duties of the board of directors, provides: "The board of directors shall have power * * * to order premiums or calls for the payment of benefits, death, losses and expenses," etc.

Section 6, art. VIII, provides: "The membership fees, premiums and annual dues and all other revenues, income or funds of the association from whatever sources derived, shall under and by the direction of the board of directors be used to discharge any of the obligations of the association," etc.

Section 4, art. XV, provides that no agent or member of the association shall have power or authority to in any manner waive any of the provisions of the by-laws, except as provided in the by-laws.

It is believed that the foregoing, in connection with the original statement of the case, constitute all the provisions of the contract under consideration material to the determination of the point now before us. The authority of the appellant to collect a membership fee of its members is to be found in Rev. St. 1925, art. 4794, as follows: "Such corporation may charge a membership or admission fee of not exceeding three dollars upon each policy issued, the proceeds of which may be placed in the expense fund, and at least 60 per cent. of all amounts realized from any other sources shall be used only for the payment of losses or benefits as they occur, or the balance thereof remaining after paying

such losses or benefits transferred to such reserved fund. Such membership fee may also apply as a payment or credit upon the initial assessment or premium, if the by-laws of the corporation so provide."

Appellant certainly had the authority to collect a membership fee of each member not to exceed $3. It had authority to make the initial payment or premium, either inclusive or exclusive of such membership fee. Unquestionably appellant was without authority to collect more than one membership fee, and, as we construe the law, it was wholly optional with the company whether it would collect any membership fee at all. Section 2 of article IV of the by-laws shows that the company itself construed its authority to collect the membership fee as optional, and provided that the board of directors might, at their option, call for a membership fee not to exceed $3 per membership. It will be noticed that the optional authority given the directors to collect the membership fee is not without restriction. It is provided that the membership fee shall be collected for such purposes as may be set out in the notice of call; that the notice of call must be mailed by the secretary to each member at least 30 days before "the premium or membership fee" becomes due. The condition under which such membership fee shall become due is further specified in section 3, art. IV, as follows: "Such call or membership fee shall be due and payable within thirty days from and after the date which notice thereof bears."

How, then, could the board of directors exercise the option to collect a membership fee, and do so under the prescribed restrictions, and yet make such action applicable to one at the time he files his application to become a member? To us it seems clear that this could not be done. It was not necessary for the company to embody the provisions of sections 2 and 3 of article IV in its by-laws. Instead it could have been just as well provided that a membership fee of $3 should accompany each application for membership. The by-laws could have vested in the directors the option to waive its payment. But no such provisions are to be found. Having made the provision that was made, and having stipulated that same should constitute a part of every contract of insurance, did not any stranger, such as insured in this case, have the right to rely upon same as the complete measure of the authority of the board of directors? We cannot escape the conclusion that such must be held to be the case.

■ Appellant greatly stresses the fact that Wright's application stated that the $12 remitted included payment of dues and premiums "to next quarterly call." To our minds the evidence does not make certain what was meant by the next quarterly call. It is clear enough that appellant construed it to mean June 1st, but Wright was not

bound by that construction. Mr. Hardy, manager of the company, testified that regular quarterly calls were made for periods beginning March 1st, June 1st, September 1st, and December 1st. It would appear that March 1st was the next quarterly call after the insurance certificates in question were issued on February 2d. The same witness, in effect, testified that it was intended to give the insured protection up to March 1st without charge. In other words, the $12 paid, whether wholly premium or in part membership fee, as distinct from premium, was intended to cover the payment for insurance for some period beginning March 1st thereafter. To our minds this fact suggests a reason for specifying in the application that the payment made included dues and premiums to the next quarterly call—meaning thereby March 1st. If thus construed, there is removed the greatest obstacle, to our ascribing to the term "membership fee," as here used in the application, the meaning of initial payment, without regard to any distinction between membership fee and premium. But, if it be merely uncertain whether the next quarterly call referred to meant March 1st or June 1st, there is an ambiguity which calls for application of the familiar rule that an insurance policy is to be construed most strongly against the company and in favor of the insured.

■ The necessity of construing membership fee(s) to mean first or initial payment, if possible, is to avoid a conflict between section 2, art. IV, and section 3, art. II, which latter provides that "each application for membership in this association must be accompanied by a membership fee," etc. The last-named provision is ineffective to impose a membership fee for two reasons: In the first place, it prescribes no amount of fee; and, in the second place, if it did, it would be wholly inconsistent with vesting an option in the board of directors to collect a fee. If possible, the two provisions must be harmonized. There is at least some uncertainty if membership fee, as used in this section, is not used to mean the initial payment. The very application in question, in designating the $12 as membership fee(s), at the same time shows that a part of it, and an uncertain part, as we have seen, in view of the language used, was not membership fees, as distinguished from premium or other dues. Giving the reference to the premiums and dues the purpose which we have pointed out, it is not at all inconsistent with the designation of the $12 as membership fees that membership fee was intended to be used to designate the initial payment, and without intending to make any distinction in premium and membership fees. As already pointed out, the board of directors, by the limitations imposed in the provision giving them an option to call for membership fee, were without authority un-

der the by-laws to impose an initial membership fee.

■ The evidence conclusively shows that, if all of the initial payment of $12 was to be credited as premiums, the certificates were in force at the death of the insured. We have, therefore, reached the conclusion that the judgment of the trial court is properly supported by special issue No. 1. We do not mean to hold that it was a proper practice to submit special issue No. 1, because the question involved was one of the construction of a contract under undisputed evidence. It was therefore the province and duty of the trial court to have determined the matter as a question of law. So determined, the judgment as to certificate No. 1536, class E, would be the same as was rendered.

The judgment will therefore be affirmed.

HICKMAN, C. J., not sitting.