## SOUTHERN TRAVELERS' ASS'N v. WRIGHT.

### Nos. 1408–5599.

Commission of Appeals of Texas, Section A.
Feb. 4, 1931.

George Mendell, of Austin, T. B. Ridgell, of Breckenridge, and J. E. Gilbert, of Dallas, for plaintiff in error.

Robert E. Bowers, of Breckenridge, for defendant in error.

SHARP, J.

For a partial statement of the material facts of this case we adopt from the opinion of the Court of Civil Appeals, 20 S.W.(2d) 1093, the following:

"Southern Travelers' Association is an insurance corporation existing by virtue of chapter 6, title 78, Revised Statutes of 1925, entitled 'Mutual Assessment Accident Companies.' By application dated January 25, 1926, W. L. Wright applied for insurance membership in said company to include insurance designated as 'Class E,' covering certain accidental injuries, and signified in the application his desire to have a double membership in said class. The application stipulated that, if same was accepted, the articles of incorporation, the by-laws of the association, the application, and certificate of membership would constitute the contract of insurance. Another statement in the application was: 'I am inclosing check for $12.00 to cover membership fee(s) which ———cludes my dues and premiums to next quarterly call.' The application was accepted, and on February 2, 1926, there was issued and in due course delivered to the said W. L. Wright two certificates of membership: one being No. 1536, class E, and the other No. 1537, class EE. Each of the certificates evidence the obligation of the insurance company to insure the applicant against accidental death in the sum of $6,000 and the

other 'benefits. On February 6, 1926, the insurance company, in transmitting the certificates to the said Wright, among other things, stated: 'We are pleased to hand you herewith certificate of membership No. 1536–37 in class E, doubled as per your application sent in through Mr. Frank Edwards;' and also, 'According to our records, your membership with us is paid up to June 1, 1926.'

"Under date of February 17, 1926, and immediately upon receipt of the certificates of insurance, said W. L. Wright wrote the company as follows:

" 'At the time I made application with your Mr. Edwards for protection in your association, I understood through him that I was paying for both health and accident insurance. I was surprised and disappointed this morning upon receipt of certificates that I was protected only against accident.

" 'May I ask you also why you have issued to me a certificate in class "E" and class "EE" both, when, according to your schedule, class EE is merely a double of class "E." Does this mean that in case of accidental death I would receive protection from both classes, making $18,000.00? It would seem that this is the case if I am protected under both classes, however it does not seem reasonable to assume that.

" 'May I have your reply to the above at once? It is probable that you have given me protection in the two classes above mentioned instead of the class E and B, which covers health and accident.'

"To this letter the insurance company replied on February 19, 1926, as follows:

" 'We have your favor 17th inst. We inclose herewith a copy of your application, which as you will note applies for membership in class E and EE.

" 'EE is merely to signify to the bookkeeping department that it is a "double header." Each membership in class E pays $6,000.00 principal sum and $100.00 per month for two entire years, for total disability, and for two memberships the cost is increased 100 per cent. and the benefits 100 per cent.

" 'We note your comment relative to the rider which has attached. That was gotten out recently in response to demands from some that wanted to know just what the benefits were, and was not explained quite plain enough, and in order to prevent any misunderstanding or complications, at the annual members' meeting February 6, by unanimous consent a resolution was passed which specifically stated as being understood that class E paid $6,000.00 principal sum, with $100.00 per month total disability benefit and the double, or doubled, or two memberships, or EE membership was merely meant to be the double of the single and in that event the single was void and the double would apply.

" 'The copy of the application herewith is the foundation of the contract as signed by you, and other members, and gives you the benefit and the costs on the front and back pages.

" 'Should you want the sick benefit, send us four dollars additional and return your certificates and we can include same, making them E and B and EE and BB. In the center of the back page you will find benefits of each class B described.

" 'If you only wanted one class in the health and accident you should have only paid Mr. Edwards $8.00 instead of $12.00. We would be glad to make the change for you, and will file your other away for you, to be taken up at any time you should want it, and credit your account with $4.00 additional for future payment. Hope that this explains matters to you fully, and if we can be of any assistance to you call on us.'

"Wright made no reply to this letter. On May 1st the insurance company mailed notice to Wright of a call for additional dues or premium claimed to be due on June 1, 1926, and later, as a courtesy, sent additional notices, both before and after said June 1st. Wright made no response to these notices, and paid the company no other sum of money than the $12.00 originally transmitted with the application. On July 18, 1926, Wright was accidentally killed in an automobile wreck and due notice of that fact given to the company. This suit was brought by Mrs. Mallie Wright, mother of the insured and beneficiary in said certificates."

The trial court submitted to the jury two special issues as follows:

"Special Issue No. 1:

"At the time of the remittance by the deceased W. L. Wright, of the sum of twelve ($12.00) dollars to the defendant, Southern Travelers' Association, was it mutually understood and agreed by and between said deceased and said defendant that said deceased would be given credit for all of said amount as a payment on premiums? Answer 'Yes' or 'No.'

"And the jury answered, 'Yes.'

"Special Issue No. 2:

"On February 19, 1926, was it mutually understood and agreed by and between the deceased W. L. Wright, and the defendant Southern Travelers' Association, that certificate or policy No. 1537 class EE, should be canceled and that four ($4.00) dollars of the twelve ($12.00) dollars theretofore remitted by said deceased to said defendant should be credited as a payment of premium on certificate or policy No. 1536, class E? Answer 'Yes' or 'No.'

"And the jury answered, 'Yes.' "

Based upon findings of the jury to the foregoing special issues, the trial court entered in

favor of plaintiff against the defendant judgment in the sum of $6,000, due upon one certificate. An appeal was made to the Court of Civil Appeals for the Eleventh Judicial District and the judgment of the trial court was affirmed. 20 S.W.(2d) 1093. A writ of error was granted by the Supreme Court.

We will describe the parties herein as plaintiff and defendant as they were described in the trial court.

The Travelers' Insurance Company contends that the Court of Civil Appeals erred in its construction of the statute under which said company was organized. That where the contract is plain and unambiguous, and is understood and construed by the parties to mean that a membership fee is charged and being paid on each of two certificates of membership, which is authorized by the applicable statute of the state and a by-law governing the parties, and no question as to the rights to collect such membership fee is made by pleading or evidence in either the trial or appellate court, the Court of Civil Appeals has no right to destroy the contract so made, construed, and acted upon by the parties by a strained construction of by-laws, which construction itself fails to justify a recovery upon one policy only after said Court of Civil Appeals has held that the contract between the parties was for two policies and was binding.

In our preliminary statement of the facts of the case adopted from the opinion of the Court of Civil Appeals, it is undisputed that Wright signed an application to the company to be enrolled as a member in class (or classes) E and inclosed check for $12 to cover membership fees, which included his dues and premiums to the next quarterly call, and that the two policies were issued based upon the application. It also provided that if two memberships were desired to check X, and class E is checked. In letter dated February 2, 1926, from the insurance company to the insured it says:

"We are in receipt of your application for membership in the Class E and EE monthly income accident protection as given to Mr. Frank Edwards on the 25th ultimo."

And the insured was advised that his application would be passed upon by the membership committee and certificates would be mailed upon approval. Again by letter dated February 6, 1926, the insurance company transmitted to the insured two policies and, among other things, says:

"We are pleased to hand you herewith certificates of membership No. 1536-37 in Class E, doubled, as per your application sent in through Mr. Frank Edwards."

The only communication in writing or otherwise from the insured to the insurance company is by letter dated February 17, 1926. To that letter the insurance company replied by letter dated February 19, 1926. Both letters are copied above. The insured, Wright, made no reply to the last letter written him by the insurance company.

On May 1st, the insurance company mailed to Wright notices of the call for additional dues or premiums, claimed to be due on June 1, 1926, and later, as a courtesy, sent additional notices, both before and after June 1st. Wright made no response to these notices and paid the association no other sum of money than the $12 originally transmitted with the application.

In plaintiff's pleadings it is alleged, in substance, that he paid the defendant $12 in cash; that such policies were delivered to him on or about February 17, 1926, and that on or about that date he called the attention of defendant that he had not applied for, nor desired the class EE policy, and on the 19th day of February, 1926, the protection was reduced to the benefits of said class EE policy, and a credit of $4 to the said Wright upon the books of the defendant; that by reason of the premises the said W. L. Wright, at the time of his death, was insured against accidental death in the sum of $6,000.

In the alternative plaintiff claims that if certificate EE had not been canceled by agreement, as alleged, then both certificates E and EE were in force and the payment of $12, originally made, was by agreement applied on the payment of the premiums on said certificates.

The defendant contested the allegations made by plaintiff and contended that no additional premiums having been paid, the insurance, by the terms of the contract, lapsed on said June 1st and was not in force at the time of the death of W. L. Wright.

Plaintiff made no allegations of fraud, accident, or mistake, nor did he ask for a reformation or modification of the contract.

Article 4794, R. S. 1925, among other things provides:

"Such corporation may charge a membership or admission fee of not exceeding three dollars upon each policy issued, the proceeds of which may be placed in the expense fund, and at least sixty per cent. of all amounts realized from any other sources shall be used only for the payment of losses or benefits as they occur, or the balance thereof remaining after paying such losses or benefits transferred to such reserve fund."

Section 3, article 2, by-laws of the insurance company, reads:

"Each application for membership in this Association must be accompanied by a membership fee and on such form as the Board of Directors may from time to time prescribe in conformity to these By-laws and the laws of the State of Texas, and in case application is rejected, the full membership fee as paid will be refunded."

Section 4, article 2, by-laws of the insurance company, reads:

"Upon the acceptance of the application of any person for membership herein there shall be issued to him a policy or Membership Certificate specified by said Board of Directors, or a Committee thereof, signed by the President and Secretary, and the said policy or membership certificate of insurance, together with the application of the said member for membership in the Association, the Articles of Incorporation, and the By-laws of this Association shall be considered in each case the entire contract between the member and this Association."

Section 3, article 4, of the by-laws, provides:

"It shall be, and is hereby made the duty of each member of this Association to remit promptly the amount of each premium call or membership fee to the Secretary of the Association at his business office at Dallas, Texas. Such call or membership fee shall be due and payable within thirty days from and after the date which notice thereof bears, and any member who shall fail to remit or to pay any call within thirty days after said notice of call is mailed waives all rights, privileges and benefits to members or beneficiaries under benefit certificates."

Section 1, article 5, of the by-laws, provides:

"Upon the failure of any member to pay premiums or any call on or before thirty days from date of mailing of said call, said member shall become and is suspended as of 12:00 o'clock noon of said thirtieth day."

J. V. Hardy, secretary of the insurance company, testified as follows:

"Under our by-laws and constitution, at that time, and the requirements of the Board of Directors, in addition to the premium, we charge $6.00 as an initiation fee for each membership, $3.00 to each certificate; that was the initial charge to become a member, that is for joining the Association; the other $6.00 was applied $3.00 on each to the certificates; forty per cent. for expenses. That paid Mr. Wright's to the next quarterly call."

■ It is a well-settled rule that in construing a contract the intention of the parties is of primary and controlling importance. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101; 2 R. C. L. p. 1216, § 34. Where the contract is unambiguous, this intention must be determined from the instrument itself, considering all its parts and their proper bearing. If the instrument as written does not really represent the contract or agreement, as made, there may be a right in equity, upon proper pleadings, to relief by way of cancellation or reformation; but this does not pertain to construction. Reynolds et al. v. McMan Oil & Gas Co. et al. (Tex. Com. App.) 11 S.W.(2d) 778.

■ The contract, as above stated, made by these parties, is too clear, plain, and unambiguous to be misunderstood. Without reformation or modification it is open to but one construction. As shown by the letter from the association to Wright dated February 6, 1926, in which they inclosed the two policies issued, based upon application made by the insured and the payment of the sum of $12 as premiums or dues, the construction of the contract by the insurance company was expressed therein in the following language:

"According to our records your membership with us is paid up to June 1st, 1926."

It is true that by letter dated February 17, 1926, plaintiff wrote to the insurance company for some information about his two policies, and in reply thereto an explanation was made by the insurance company as to their construction of the contract made with reference to the two policies, and to this letter no reply was made by the insured.

■ Our Supreme Court has held many times that when a policy is issued and delivered to the insured he is bound by its terms. Ætna Insurance Co. v. Holcomb, 89 Tex. 404, 34 S. W. 915; Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Goddard v. Insurance Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1.

■ In the absence of fraud, accident, or mistake, it will be conclusively presumed that the parties to a contract were familiar with and understood the subject-matter about which they have contracted and that the terms used by them were intended to be given the ordinary and popular accepted meaning. Magnolia Petroleum Co. v. Connellee (Tex. Com. App.) 11 S.W.(2d) 158; 13 C. J. page 531, § 489.

■ The rule is well settled that to annul or modify a contract, fairly made, requires the consent of both parties, as it did to make it. There must have been the same meeting of minds, the same agreement to modify or abandon it, that was necessary to make it. Wheeler v. New Brunswick Ry., 115 U. S. 29, 5 S. Ct. 1061, 1160, 29 L. Ed. 341.

■ Neither the pleadings nor the evidence justified the trial court in submitting the two special issues above described to the jury, and that court erred in rendering judgment in favor of plaintiff thereon. The Court of Civil Appeals erred in affirming the judgment. We think this assignment should be sustained.

Therefore we recommend that the judgment of the Court of Civil Appeals and the trial court should be reversed, and this cause be remanded to the trial court for another trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the

cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.