AMERICAN CASUALTY & LIFE CO. v.
COMBS.

No. 6035.

Court of Civil Appeals of Texas. Amarillo.
March 6, 1950.

Rehearing Denied April 3, 1950.

Gibson, Ochsner & Little, Amarillo, for appellant.

Merchant, Fitzjarrald & Pope, Amarillo, for appellee.

PITTS, Chief Justice.

This action was instituted by appellee, William Thrope Combs, against appellant, American Casualty and Life Company, a corporation, seeking to recover benefits alleged to be due him under the terms of a health and accident policy issued to him by appellant and as a result of injuries he sustained on June 10, 1947. The case was tried before a jury, which was discharged by the trial court without objections by either party after the evidence was heard and judgment was rendered, as a matter of law, for appellee for the sum of $500.00, from which judgment an appeal has been perfected to this court.

It is agreed by the parties that the sole question to be determined here is whether or not the policy of insurance sued on was in force at the time appellee was injured. Appellant contends that the insurance contract and the State law authorized it to collect a membership fee out of the initial payment made by appellee on the contract and that it, by reason of such authorities, divided the initial payment so made by applying a part of it on the payment of a quarterly premium and the remainder of it was applied as a membership fee. Appellee contends that appellant was not authorized to apply any part of the initial payment on a membership fee but was re-

quired by law to apply all of the initial payment on the premium. It is conceded that if appellant is correct in its contentions, the benefits of the policy had expired at the time of appellee's injury while the policy had not expired if appellee is correct in the position he takes.

■■ Appellee pleaded the terms of the policy and his application for such by attaching to his pleadings a copy of each and making them a part thereof. He likewise introduced both of them in evidence. There is little, if any, controversy about the facts presented. The record reveals that appellee contracted for the policy through appellant's agent, David W. Ridge, in consideration of an initial payment of $20.00 and that the policy was thereafter delivered to appellee by Ridge. The effective date of the policy was February 19, 1947, and its terms therein provided that the same was issued in consideration of the statements made by appellee as the applicant and in consideration further of the initial payment made in advance. The policy further provided for the payment of premiums quarterly, semi-annually or annually and it also provided for a grace period of fifteeen days. The terms of the policy further provided, in effect, that it would become effective at noon on February 19, 1947, continue in force for a period of three months as a result of the payment of the initial premium, and that its benefits would expire at the end of the first grace period following the period covered by the payment of the initial premium if further premiums were not paid. The terms of the policy provided further that no agent had authority to make any changes in its terms or waive any provisions therein contained but that the terms of the policy, together with the application therefor and the company's by-laws, with any amendments thereto, constituted the entire contract for insurance between the parties. Such were pleaded and proved by appellee and it has been many times held that after a policy has been issued and delivered to the insured, the parties are bound by its terms so long as it is kept in force. It has likewise been held that: "In the absence of fraud, accident, or mistake, it will be conclusively presumed that the parties to a contract were familiar with and understood the subject-matter about which they have contracted and that the terms used by them were intended to be given the ordinary and popular accepted meaning." Southern Travelers' Ass'n v. Wright, Tex.Com.App., 34 S.W.2d 823, 826. The record does not reflect any claim of fraud, accident or mistake in this case.

Appellant introduced in evidence a certificate issued by the Texas State Board of Insurance Commissioners authorizing it to engage in business in Texas in accordance with the provisions of Articles 4859f and 5068—1, Vernon's Annotated Revised Civil Statutes, for the year covering the period the policy in question was issued and another such certificate was introduced for the first succeeding year thereafter. Section 10 of Article 4859f provides in part as follows: "All policies issued by a corporation under this Act shall provide that said policy is subject to the by-laws of the corporation and all future amendments thereto."

Section 11 of said Article provides in part: "* * * such agent shall not have power to waive, change or alter any of the terms or conditions of the application or policy."

Section 2 of Article 5068—1 provides in part: "'Membership fee' shall be the amount of the first assessment or assessments permitted by the Board to be placed in the expense fund of associations, representing cost of soliciting or procuring the member."

Section 12 of the same Article provides in part: "At least sixty (60%) per cent of assessments collected, except the membership fee, must be placed in the mortuary or relief fund."

The record reveals that appellant's by-laws had been approved by the State Insurance Department and that a portion of the said by-laws was introduced in evidence which provides that: "The Board of Directors shall be empowered to create an acquisition cost to be known as a membership fee."

Alene Book testified, in effect, that she had been associated with appellant for ten years and had been a member of the Board of Directors and assistant secretary for the past seven years; that she was the executive officer who countersigned the policy in question; that the Board of Directors in compliance with the provisions of the by-laws had created what they called "a membership fee" as an acquisition cost for covering the expense of procuring and issuing the policy; that the said Board of Directors segregated the initial payment of $20.00 made on the policy contract by appellee and set aside $5.00 of it· as a membership fee and applied the remaining $15.-00 on the policy contract as a payment of the first quarterly premium thereon; that their records concerning these and other matters were thereafter examined and approved by the Insurance Department in November, 1947. It therefore appears from the record that the creation of a membership fee and applying $5.00 of appellee's initial payment to a membership fee was approved by the State Department of Insurance. Alene Book further testified, in effect, that appellee made no further payments for premiums on the policy; that ten days before the second quarterly premium was due appellant mailed a notice to appellee advising him that his second premium on the policy was due and that he was thereafter notified by mail that such second premium had not been received; that before the policy contract terminated, four notices were mailed to appellee concerning such without having any response from him to any of them; that the policy lapsed on May 19, 1947, for nonpayment of premium, which he could have paid any time during the fifteen day grace period following May 19, 1947, but such premium was not paid; that appellant did not hear from appellee until a letter dated June 23, 1947, was received from an attorney claiming for appellee the benefits here sued on.

David W. Ridge, appellant's agent, who negotiated the sale and consummation of the contract with appellee here involved, testified that he explained to appellee during the negotiations and at the time the policy was delivered the terms of the policy,

the type of coverage it had, the cost of it and that the initial payment of $20.00 would keep the policy in force for a period of three months as was shown on the face of the policy.

Appellee did not testify himself or offer any witnesses during the trial. The testimony of Alene Book and David W. Ridge was not controverted or denied. Under the law appellee was charged with knowledge of the terms of the contract, which was composed of the terms of the policy, the application and appellant's. by-laws, which was made a part thereof by the terms of the policy itself. The record shows that all of such were likewise explained to appellee by Ridge and that appellee was notified by appellant through the mail of the due date of the second premium under the policy contract. There is nothing in the record to indicate that appellee did not have knowledge of and understand the terms of the contract or that he claimed any error was made in applying any part of the initial payment on a membership fee. There is nothing in the record to indicate that appellee did not have full knowledge of the due date of the second quarterly premium.

Both parties are relying on the terms of the contract and the provisions of the law to support their respective positions here presented. Appellee contends that appellant was not authorized to assess a membership fee against him in addition to the usual assessments or premiums or to use any part of the initial payment of $20.00 for membership fee and that $5.00 of the same, over and above the first quarterly premium, should have been applied on the second quarterly premium, in which event the policy contract would have been in force when appellee sustained his injury on June 10, 1947. He further contends that the law applied the said sum of $5.00 on the second quarterly premium if, for any reason, appellant did not so apply it. In support of his position, he cites Appelman's text on Insurance Law and Practice, Volume 15, § 8275, page 57, which provides in part as follows: "Where excessive assessments have been levied, or improper premiums or dues collected, and the excess over the

legitimate charges is sufficient to pay the charges falling due, the insurer must apply such excess to that payment, or the law will make such application in its stead."

However, the same text, Appelman's, Insurance Law and Practice, Volume 14, § 7839, pages 22 and 23, provide in part as follows:

"Where an application for a benefit certificate requires payment of the first assessment and registry fee as a condition precedent to membership, the same provision being contained in the by-laws, the applicant does not become a member and the certificate is not in force until such payments are actually made.

\* \* \* \* \* \*

"Nor is a membership fee, which is required in addition to premiums, properly applicable to the payment of future premiums."

The burden was upon appellee to establish the fact that the policy declared upon was in force at the time of his injury on June 10, 1947. It is our opinion that the contrary is conclusively shown to be true under the record and the law governing such cases. Appellant is a State-wide mutual assessment company authorized to pursue business in accordance with the provisions of Articles 4859f and 5068—1, Revised Civil Statutes. Appellant was authorized by the State Board of Insurance Commissioners to issue the policy here sued on as is shown by a copy of its certificate found in the record. It is our opinion that the provisions of the said Articles and that part of appellant's by-laws heretofore cited and quoted as being applicable hereto authorized appellant to create a membership fee to care for the expense of operation and that the sum of $5.00 of appellee's initial payment of $20.00 was legally applied as a membership fee. A simple calculation therefore reveals that a second premium was due on the policy in question on May 19, 1947, with a grace period of fifteen days added thereto; that appellee had been so advised when he accepted the policy and notice of such had been subsequently given to him but he failed to pay the second quarterly premium and the policy lapsed on or about June 3, 1947, which was approximately one week before the date of his injury.

Such being true the policy in question was not in force at the time appellee was injured and he is not entitled to receive the benefits claimed. The judgment of the trial court is therefore reversed and judgment is here rendered denying appellee any recovery.