Pat S. Russell, Dallas, for appellant.

Brundidge, Fountain, Elliott & Bateman, Dallas, for appellee.

Herman BAKER, Appellant,

v.

GLENS FALLS INDEMNITY CO., Appellee.

No. 15064.

Court of Civil Appeals of Texas.

Dallas.

March 1, 1956.

Rehearing Denied March 30, 1956.

CRAMER, Justice.

This is an action on a fidelity bond with Baker as employer and Glens Falls Indemnity Company as surety. The bond provided, in substance, that the Indemnity Company agreed to pay Baker, within sixty days after proof of loss, the amount of all direct losses which any person named in the schedule attached may, while in any position at any location in the service of Baker, directly or by collusion with others, cause to the employer, including loss of money and other personal property in the employee's custody or possession whether or not the employer is liable therefor, but not to exceed the amounts therein stated, through larceny, theft, embezzlement, forgery, misapplication, wrongful abstraction, willful misapplication, or any other act of fraud or dishonesty committed during the policy term. While the bond was in full force and effect one of the routemen employees of Baker, who sold Baker's products, when inventoried had on hand products and in cash from sales, added together, $514.05 less than the original inventoried sales price. Baker then made

claim therefor against appellee on the bond. The claim was rejected and payment refused on the ground that it was not such a claim as was covered by the terms of the bond and this suit resulted. On the trial of the case the jury found on the two special issues submitted to them that: (1) The employee involved did not appropriate to his own use and benefit merchandise of reasonable value of $514.05 entrusted to him under his employment contract with Herman Baker; and (2) the employee involved did not appropriate to his own use and benefit the sum of $514.05, the proceeds from the sale of merchandise entrusted to him by Baker under their employment contract. There was no objection to the charge and no issues requested by either party.

On the verdict the trial court entered a take nothing judgment. After Baker's motion for new trial was overruled, he duly perfected this appeal. The motion for new trial contained two paragraphs. Paragraph 1 complained only that the judgment was contrary to the law and legal evidence, does not support, but authorized a judgment in favor of plaintiff. Paragraph 2 asserts: "That the court erred in sustaining the defendant's objections made to the plaintiff's tendered testimony while the plaintiff was on the witness stand under direct examination, that 'the fidelity bond sued on was issued by the defendant and delivered to the plaintiff with the agreement and understanding that the same was to cover any and all losses sustained by the plaintiff by way of shortages in accounts with route men named and described on said fidelity bond that resulted from the route men's failure in refusing to return merchandise entrusted to the route men or to remit to the plaintiff the invoiced prices thereof in the absence of any other justifiable explanation for such loss' and the further testimony offered by the plaintiff while on the witness stand, that was objected to by the defendant and which objection was sustained by the court that 'when checking out a route man or checking a route man, if the plaintiff had not

been paid for merchandise entrusted to the route man, and the route man did not have the merchandise on hand to return to the plaintiff, that the amount of such shortage of money or merchandise would be a loss within the terms of the fidelity bond unless the same could be justifiably explained', that such testimony was admissible was authorized under the pleadings tended by the plaintiff and it was in error for the court to sustain the defendant's objections thereto."

Point 1 was as follows: "The court erred in sustaining the appellee's objection to the appellant's offered testimony of the conversation between the appellant and the agent of the appellee company, a part of the application for the fidelity bond, for the reason that the application for the fidelity bond (whether oral or in writing) and the fidelity bond, construed together show the understanding and intentions of the parties and the exact contract between the parties and as such was admissible and material testimony. Plaintiff's bill of exception No. 1."

Points 2 to 6 inclusive are identical with point 1, except that in the last sentence, the bill of exception numbers are from 2 to 6 respectively.

These points are answered by three counter-points, in substance: (1–2) Baker having alleged that he desired a bond to indemnify him for any loss sustained because of dishonesty of his routemen, and explained to the Indemnity Company agent the nature and type of his operations, and then asked if it could supply such a bond, the Indemnity Company issued to him the bond herein sued on, covering direct losses caused by any dishonest act or any other act of fraud or dishonesty of such employees, and Baker having alleged the loss here was caused wholly by a certain routeman having appropriated to his own use and benefit his (Baker's) merchandise, or in the alternative, the cash proceeds thereof, and not having alleged facts that would authorize (a) a reformation of the policy

or a recovery as if it was reformed, the further allegation of an understanding and agreement between Baker and the Indemnity Company that any loss sustained as a result of a routeman's failure and refusal to return merchandise entrusted to him, or to remit for merchandise sold to him, would be a loss within the terms of the bond, was immaterial and the court did not err in excluding parol evidence of such an agreement or understanding. (3) It was not error to exclude the testimony of an oral understanding or agreement to the effect that all losses caused by the routeman's failure to account for merchandise entrusted to him would be a loss coming within the terms of the bond sued on regardless of the cause of such shortage or inability to account, in the light of Baker's pleading that the Indemnity Company had supplied him with the type of bond he desired and that the loss complained of was caused wholly by certain dishonest acts of the employee within the terms of the bond.

■ Since the parties have briefed the points and counterpoints together, we will so consider them. Only two witnesses testified on the trial, appellant Baker and the route salesman covered by the bond in question here. Both being interested witnesses, their evidence was for the trier of the facts.

All the excluded evidence complained of in the six bills of exception was asked of appellant Baker by his, Baker's attorney and as shown by the bills of exception to be as follows: Bill No. 1 is to the sustaining of objection to the question, "What did you say to the gentleman at Felix Harris Company?" on the ground that it was wholly immaterial and hearsay and an attempt to vary the terms of a written instrument and shows that if allowed to answer it would show that Baker told Felix Harris Company that he wanted a fidelity bond that would cover any and all losses he sustained with his routemen through their failure to pay for merchandise sold, or to return unsold merchandise that was not covered by some other casualty insurance the plaintiff carried. Bill No. 2 is to a sustaining of an objection to a question, "What was in your application to them for this bond?" which followed the further questions and answers, to wit: " 'Did you make application to Felix Harris Company for this bond?' To which the witness answered 'Yes, sir'. And the following question was then asked: Q. 'Oral application or written application?' A. 'Oral.' " The objection was on the same grounds as was Bill No. 1.

Bill No. 3 is to the sustaining of an objection to the questions to and answers of Baker, to wit: "Q. 'State whether or not you stated to Felix Harris Company, in connection with the procurement of this bond, the nature of your business in Sherman?' Answer: 'Yes, sir.' Thereupon, Mr. Harold Bateman, attorney for the defendant, objected to the question asked and stated: 'I object to that, Your Honor, and ask that the Court instruct the jury not to consider it, because it violates the instructions of the Court, and ask the Court to instruct the jury not to consider it;' ' * * * that it would be inadmissible under the general rules of evidence.' And the plaintiff's attorney stated and replied: 'That it is the plaintiff's contention and we think the cases support it, that the bond itself being general in character, evidence is admissible to show the circumstances and the understandings between the parties at the time the bond was issued, not to vary the terms of the bond, but to give meaning and effect of the general provisions of the bond.' But the Court sustained the objections and excluded the testimony and instructed the jury not to consider it."

Bill No. 4 was to the exclusion of instruction not to consider the question or answer as follows: "Q. 'Did you supply the information "routeman"?' A. 'Yes, sir.' Q. 'What was the occasion for your giving the information about "routeman"?' A. 'So they would know what type bond.' Q. 'What did you tell them?'

A. 'I told them ———' Thereupon Mr. Harold Bateman, attorney for defendant, objected to witness completing the answer and said: 'Now, Your Honor, that's the same thing he has tried to slip in before and the Court ruled on it.' And plaintiff's attorney stated and replied that if allowed to answer such question, the witness would testify and that such attorney expected by the answer of the witness, if allowed, to show that the plaintiff wanted a fidelity bond covering his routeman that would insure his routeman making payment to him of all merchandise sold and would return to him all merchandise unsold, unless stolen from the routeman or destroyed by fire or other casualty beyond the routeman's control. But the court sustained such objection and excluded such testimony."

Bill No. 5 was to the exclusion of the evidence shown herein as follows: "Q. 'Was the term "routeman" as used in this bond, the employment arrangement that you had with Craig Banzer?' A. 'Yes, sir.' Q. 'Did you explain to Felix Harris Company that arangement?' A. 'Yes, sir.' Q. 'Did Felix Harris Company tell you this bond they were giving you would cover that ———' Thereupon, Harold Bateman, attorney for the defendant, objected to the question as being immaterial and irrelevant and an effort to vary the terms of the written contract sued on, and it is hearsay. And plaintiff's attorney stated and replied: 'That if allowed to answer such question, the witness would testify, and that such attorney expected by the answer of the witness, if allowed, to show that Felix Harris Company, through its agent, told the plaintiff that the fidelity bond that they would issue him would cover his employment arrangement with routemen and would insure the routeman's faithful payment of all monies and merchandise sold and return of all merchandise unsold, unless stolen from the routeman or destroyed by fire, or other casualty beyond the routeman's control.' But the Court sustained such objections and excluded such testimony."

Bill No. 6 was to the evidence as follows: "Q. 'Mr. Baker, if an employee working for you under employment arrangements you had similar to the one with Craig Banzer had absconded with merchandise entrusted to him by using it himself, was this bond—was it your intention this bond was supposed to cover that?' Thereupon Mr. Harold Bateman, attorney for defendant, objected, stating: 'Now, Your Honor, we object again to what his expectations were.' And the Court sustained the objection. Attorney for the plaintiff proceeded to ask the witness this question: Q. 'Well, did they tell you it would cover appropriation by the salesman of your merchandise to his own use?' Thereupon, Mr. Harold Bateman, attorney for defendant, stated: 'Now, we object to that, if the Court please—' And the plaintiff's attorney stated and replied: 'That if allowed to answer such question, the witness would testify, and that such attorney expected by the answer of the witness, if allowed, to show that Felix Harris Company told the plaintiff that the fidelity bond would cover appropriations by the routemen of the plaintiff's merchandise to their own use.' But the Court sustained such objection and excluded the testimony."

Each of the bills contained all necessary predicate as to the nature of the case and other formalities.

The evidence excluded was within the allegations of paragraph III-A of appellant Baker's petition and if the allegations in that paragraph were proper and the evidence thereunder was admissible, the trial court erred in sustaining the objections stated, and such error was of such a nature as to require a new trial. Paragraph III-A was as follows: "Plaintiff says that at the time said bond was issued by the defendant herein, and the renewal thereof, and at all times during the life of said original bond and the renewal thereof, it was the understanding and agreement between the plaintiff and defendant, arrived at by and through the agent of the defendant as alleged above, that any losses sustained by the plaintiff

by way of shortages in the accounts of the routeman named and designated on said fidelity bond, that were the result of a routeman's failure and refusal to return merchandise entrusted to him or to remit for merchandise sold by him, would be a loss coming within the terms of said bond, and defendant is estopped to deny such agreement."

■ After a search of the authorities we have concluded that our Supreme Court has settled the question of whether or not the application for the insurance controls where it conflicts with the provisions of the policy, and if there is no count in the pleadings to reform the policy. In Southern Travelers Ass'n v. Wright, Tex.Com. App., 34 S.W.2d 823, 826, the Commission of Appeals, speaking through Judge Sharp, then a Commissioner, but with the Supreme Court's notation "We approve the holdings of the Commission of Appeals", it was held: "It is a well-settled rule that in construing a contract the intention of the parties is of primary and controlling importance. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101; 2 R.C.L., p. 1216, § 34. Where the contract is unambiguous, this intention must be determined from the instrument itself, considering all its parts and their proper bearing. If the instrument as written does not really represent the contract or agreement, as made, there may be a right in equity, upon proper pleadings, to relief by way of cancellation or reformation; but this does not pertain to construction. Reynolds v. McMan Oil & Gas Co. (Tex.Com. App.) 11 S.W.2d 778." And as follows: "Our Supreme Court has held many times that when a policy is issued and delivered to the insured he is bound by its terms. [Citing authorities.]"

In our opinion that holding is directly in point here and controls the disposition of this appeal against appellant.

No reversible error appearing in appellant's points, the judgment of the trial court is

Affirmed.